**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000403
27-OCT-2021
07:51 AM
Dkt. 68 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
NIKOLAUS SLAVIK, Defendant-Appellant

NO. CAAP-19-0000403

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-18-0000548)

OCTOBER 27, 2021

GINOZA, CHIEF JUDGE, LEONARD AND NAKASONE, JJ.

OPINION OF THE COURT BY LEONARD, J.

This case examines, *inter alia*, the statutory scheme governing firearms, ammunition, and dangerous weapons in Hawaiʻi, in particular the general regulations applicable to firearms and ammunition. Of particular note, we hold that, in the context of Hawaii's firearm control statute – specifically, Hawaii Revised Statutes (**HRS**) §§ 134-2 (2011) & 134-3 (2011 and Supp. 2019) – evidence of possession of a firearm, without more, is

insufficient to support a justifiable inference that a defendant acquired ownership of the firearm.  For the reasons set forth below, we reverse in part, and vacate in part, and remand this case for further proceedings.

Defendant-Appellant Nikolaus Slavik (**Slavik**) appeals from the April 22, 2019 Judgment of Conviction and Sentence; Notice of Entry of Judgment (**Judgment**), entered by the Circuit Court of the Third Circuit (**Circuit Court**) following a jury trial.[1]  Slavik was convicted of:  Carrying or Possessing a Loaded Firearm on a Public Highway (**Possessing Loaded Firearm on Highway**), in violation of Hawaii Revised Statutes (**HRS**) § 134-26(a) (2011) (**Count 1**); Permits to Acquire, in violation of HRS § 134-2(a) and § 134-17 (2011) (**Count 2**); Registration Mandatory, in violation of HRS § 134-3(b) and § 134-17 (**Count 3**); and Place to Keep Ammunition, in violation of HRS § 134-27(a) (2011) (**Place to Keep**) (**Count 5**).[2]

I.    BACKGROUND

On June 20, 2018, Hawaiʻi County Police Department (**HCPD**) Officers Henry Ivy (**Officer Ivy**) and Denapoli Fui (**Officer Fui**) conducted a welfare check on Slavik, who was sleeping in a car on the side of Māmalahoa Highway, in the Kaʻū District of the County of Hawaiʻi.  When he approached the car, Officer Ivy noticed a pistol laying on the passenger seat, underneath Slavik's right hand.  While Officer Fui approached on the driver

---

[1]    The Honorable Robert D.S. Kim presided.

[2]    Counts 4, 6, and 7 were dismissed before trial.

side, Officer Ivy reached into the open passenger-side window and removed the gun, placing it on the ground, before they awoke Slavik.

Officer Ivy identified the gun as "[h]omemade brown wooden grip single-shot .22 caliber Rimfire pistol without any identifiable markings, brands or numbers." When the officers ran Slavik's information, they determined he had no firearm permits issued and no firearms registered in his name. On a pat-down of Slavik after his arrest, Officer Fui discovered a single .22 caliber round, along with some nuts, bolts, and coins, in Slavik's front left pocket.

On July 11, 2018, Slavik was charged by Information and Complaint (**Complaint**) with seven counts; he was later tried and convicted on Counts 1, 2, 3, and 5, which read as follows:

COUNT 1 (C18017297/KU)
On or about the 20th day of June, 2018, in Kau, County and State of Hawaiʻi, NIKOLAUS SLAVIK, intentionally and/or knowingly possessed and/or carried in a vehicle any firearm loaded with ammunition on a public highway, and NIKOLAUS SLAVIK was not licensed to carry a pistol or revolver and ammunition by the Chief of Police for the County of Hawaiʻi, pursuant to Section 134-9, thereby committing the offense of Carrying or Possessing a Loaded Firearm on a Public Highway, in violation of 134-26(a), Hawaiʻi Revised Statutes, as amended.

COUNT 2 (C18017310/KU)
On or about the 20th day of June, 2018, in Kau, County and State of Hawaiʻi, NIKOLAUS SLAVIK intentionally, knowingly or recklessly acquired the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, without first procuring a permit to acquire the ownership of the firearm from the chief of police of the county of his place of business or, if there was no place of business, his place of residence or, if there was neither a place of business nor residence, his place of sojourn, thereby committing the offense of Permits to Acquire, in violation of Sections 134-2(a) and 134-17, Hawaiʻi Revised Statutes, as amended.

COUNT 3 (C18017311/KU)
On or about the 20th day of June, 2018, in Kau, County and State of Hawaiʻi, NIKOLAUS SLAVIK who intentionally and/or knowingly acquired a firearm pursuant to Section 134-2, Hawaiʻi Revised Statutes, and such acquisition was by way of gift, inheritance, bequest, or in any other manner, whether such firearm is usable or unusable, serviceable or unserviceable, modern or antique, registered by prior law or unregistered, NIKOLAUS SLAVIK did intentionally, knowingly, or recklessly fail to register the firearm in the manner prescribed by section 134-3 within five days of acquisition, thereby committing the offense of Registration Mandatory, in violation of Sections 134-3(b) and 134-17, Hawaiʻi Revised Statutes, as amended.

. . . .

COUNT 5 (C18017344/KU)
On or about the 20th day of June, 2018, in Kau, County and State of Hawaiʻi, NIKOLAUS SLAVIK, intentionally and/or knowingly possessed an item knowing it was ammunition, and he intentionally, knowingly, and/or recklessly was not licensed to carry a pistol or revolver and ammunition concealed on his person pursuant to Section 134-9 and, he was not engaged in hunting and/or target practice as provided in Section 134-5, and he intentionally, and/or knowingly failed to confine the ammunition to his place of business, residence, or sojourn and/or did fail to carry the ammunition in an enclosed container from the place of purchase to his place of business, residence, or sojourn, or between [locations], thereby committing the offense of Place to Keep Ammunition, in violation of Section 134-27(a), Hawaiʻi Revised Statutes, as amended.

On September 4, 2018, Slavik filed a Motion to Dismiss Counts 1 and 5 of the Information/Complaint Due to Insufficient Charging Language (**Motion to Dismiss**). Specifically, Slavik contended that the Complaint failed to allege that (1) the firearm and ammunition were operable, and (2) the state of mind at the time he possessed the object in question, *i.e.*, that when Slavik possessed the firearm and ammunition, he "believed, knew, or recklessly disregarded the substantial and unjustifiable risk, that the object was a prohibited item."

On October 25, 2018, after a hearing on the Motion to Dismiss, the Circuit Court entered an order denying the motion and finding that "[t]he charges as reflected in the Information and Complaint give[] sufficient notice to the Defendant as to the

4

essential element of state of mind and the material element of firearm that he must defend against."

On August 21, 2018, Plaintiff-Appellee State of Hawaiʻi (**State**) filed a Notice of Intent to Use Specified Evidence, stating that it intended to present evidence relating to prior investigations and allegations of drug activity and/or Slavik's prior bad acts. Citing Hawaiʻi Rules of Evidence (**HRE**) Rule 404, the State stated that it intended to use evidence relating to Slavik's (alleged) conviction for Theft in the Second Degree, in case number CR15-1-0139K. The deputy prosecuting attorney (**DPA**) attested that Slavik had been convicted of that offense on August 8, 2018. However, the record in that case indicates that the Circuit Court entered a deferred acceptance of guilty plea on December 1, 2015, which the State petitioned to set aside on June 26, 2018, after Slavik allegedly failed to comply with the terms of his probation. Court minutes in CR15-1-0139K indicate that a hearing was held on August 8, 2018, at which time the court orally granted the Motion to Set Aside. Nevertheless, a judgment of conviction was not entered in CR15-1-0139K until April 22, 2019, the same day that judgment was entered against Slavik in this case.

On December 21, 2018, the State filed its Motion in Limine No. 1 (**State's Motion in Limine**) seeking an order permitting the introduction of the theft conviction "in its case-in-chief for the limited purposes of establishing credibility and impeachment of the Defendant." On that day, Slavik filed Defendant's First Motion in Limine (**Slavik's Motion in Limine**),

which sought, *inter alia*, to exclude "[t]estimonial or documentary evidence relating to [Slavik's] prior criminal record except as specifically permitted by prior court order[.]"

At the December 28, 2018 hearing on, *inter alia*, both of these motions, the Circuit Court granted the State's motion "if the defendant testifies" and "if proper foundation is set." Defense counsel then attempted to clarify:

> [DEFENSE COUNSEL]:  My -- my only question would be is it simply Mr. Slavik testifying that allows them, or does Mr. Slavik need to say something that opens the door to the testimony?
>
> THE COURT:  Well, if he testifies it comes into play, and then they have to establish the proper foundation for its use.
>
> [DEFENSE COUNSEL]:  Okay.
>
> THE COURT:  So the answer is yes and yes.

On January 2, 2019, the Court entered Findings of Fact, Conclusions of Law, and Order Granting State's Motion in Limine No. 1 (**Order Granting State's Motion in Limine**), finding and concluding that:  "The State may use the Defendant's prior bad acts if the Defendant testifies and a proper foundation is laid."

At trial, which was held on January 2 and 3, 2019, the State called four witnesses, HCPD Officers Ivy and Fui, senior police records clerk for the HCPD Records and Firearms Section Arlene Young (**Young**), and HCPD evidence custodian Gerald Arguello.

Officer Ivy testified that on the morning of June 20, 2018, he was on duty as a patrolman in the Kaʻū District.  At approximately 7:15 a.m., Officer Ivy was informed by another officer of a phone report of a male party "asleep . . . or possibly even unconscious or dead" in a vehicle off to the

shoulder on Māmalahoa Highway near Aloha Boulevard and "they wanted me to perform a welfare check on that individual." Officer Ivy identified Slavik in court.

Officer Ivy testified that he found the reported car off the shoulder on Māmalahoa Highway, and he noticed a male occupant, later identified as Slavik, in the car, before parking his HCPD vehicle behind it. Slavik was the only occupant in the car, and he was in the driver's seat in a reclined position with his eyes closed; Officer Ivy assumed Slavik was asleep. Officer Ivy testified that the car appeared to be hand-painted a "primer gray color" and that he was on a raised alert that the car might be stolen because HCPD considered a car to be possibly stolen when hand-painted in a way that can disguise its original paint job, and the car "looked like a typical" example. Officer Ivy testified that his partner, Officer Fui, was just pulling up as Officer Ivy was exiting his HCPD vehicle to investigate.

Officer Ivy approached the car on the passenger side, and Officer Fui approached on the driver's side. Officer Ivy stated that he first checked Slavik's hands and noticed a pistol laying on the passenger seat "under" Slavik's right hand. Officer Ivy then drew his weapon and gestured to Officer Fui to alert him of the presence of a pistol. Slavik remained asleep. Officer Ivy testified that the passenger window was down and he used one hand to remove the pistol from the car and place it on the ground. Officer Ivy testified that the officers then woke Slavik, informed him that he was being placed under arrest for suspicion of having a loaded gun in his possession, and Slavik

cooperated with the officers. Officer Ivy described the appearance of the pistol as loaded because it was "a[n] old-fashioned style pistol that you can actually visually see if there's a round chambered." Officer Ivy testified that the pistol had no markings, distinguishing make and/or model, or serial number, and identified State's exhibit "20" as the pistol recovered from the passenger seat in the car. Officer Ivy testified that Slavik was then patted down and transported to an HCPD station.

Officer Fui identified Slavik and testified that he was on duty on June 20, 2018, when he encountered Slavik at the scene of a welfare check along a highway. On arriving at the scene, Officer Fui noticed that the car "looked beat up." Officer Fui testified to approaching the car from the opposite side from Officer Ivy who was on the passenger side, that Officer Ivy signaled the presence of a weapon, and that Slavik did not wake while Officer Ivy removed what appeared to be a weapon from the passenger side of the car. The officers then woke Slavik, who "kinda just kinda seemed, uh, startled like, 'What's going on?' like, you know, when you wake up." Officer Fui testified that Officer Ivy informed Slavik that he was being placed under arrest; Slavik complied but seemed confused. Officer Fui testified that, following a brief pat-down, Slavik was transported to the Nāʻālehu HCPD station. At the Nāʻālehu station, a more-thorough "inventory search" was performed on Slavik during which, *inter alia*, a .22 caliber round of ammunition was found. Officer Fui testified that Officer Ivy had

not indicated to him at the scene that the car Slavik was found in might have been stolen, and Officer Fui first testified that he had not done an ownership check on the car nor contacted the owner. After refreshing his memory from his police report, Officer Fui then testified that he had in fact spoken with the actual owner of the car, although he did not recall whether the owner wanted to press any charges for a stolen vehicle.

Young testified about the processes for obtaining a firearm permit and for registering a handgun. She explained that prior to registering a firearm, an applicant must have a permit. The applicant then must bring the unloaded firearm for an inspection, which would include a verification of the item's make, model, serial number, caliber, and barrel length. Young testified that it would be rare that the make of the firearm is not on the firearm. Firearms produced without a serial number would have a serial number engraved on it. She stated that she would check the County of Hawaii's computer systems, and then statewide, for a permit to acquire before she would register the firearm.

Young testified that she did a statewide check for records on Slavik's name, beginning with the county's records, looking for a permit application and existing registrations. She testified that she found no record that Slavik had a permit to acquire a firearm nor any firearm registered to him.

After the close of the State's case in chief, Slavik moved for a judgment of acquittal. Defense counsel argued that: (1) Slavik was in a gravel area adjacent to the road, and not on

the shoulder of the road or the road itself; (2) the State failed to prove the item recovered was an operable firearm, as there was a test done to see if the "firearm" would ignite a primer and there was no evidence showing that it could fire a bullet; and (3) the State did not prove possession of the firearm, where the testimony was that Slavik was found asleep with his hand on top of it.  The Circuit Court denied the defense motion.

After a colloquy, Slavik waived his right to testify and the defense rested its case.

The Circuit Court instructed the jury, including various instructions offered by the State, over Slavik's objection that the defense's proposed instructions were more clear.  On Count 1, the court instructed the jury:

> In Charge 1, [Slavik] is charged with the offense of Carrying or Possessing a Loaded Firearm on a Public Highway.
> A person commits the offense of Carrying or Possessing a Loaded Firearm on a Public Highway if while on a public highway, he had in his possession and/or carried in a vehicle a firearm loaded with ammunition, without a license to carry.
> There are three (3) material elements for the offense of Carrying or Possessing a Loaded Firearm and four (4) additional items, each of which the Prosecution must prove beyond a reasonable doubt.
> These three (3) material elements are:
> 1.   (conduct):  The Defendant had in his possession or carried in a vehicle a firearm, a pistol, that was loaded with ammunition;
> 2.   (conduct):  The Defendant was not licensed by the Chief of Police to carry a firearm, pistol;
> 3.   (attendant circumstances):  That the Defendant was on a public highway;
> The Prosecution must also prove beyond a reasonable doubt:
> 4.   (state of mind):  That Defendant acted intentionally or knowingly with regard to material element 1.; and
> 5.   (state of mind):  That Defendant acted intentionally, knowingly, or recklessly with regard to any material elements 2. through 4.; and
> 6.   (date):  That this offense took place on or about June 20, 2018; the exact date is not required; and
> 7.   (jurisdiction and venue):  That this offense took place in the County and State of Hawaiʻi.

If you find that the Prosecution has proven beyond a reasonable doubt items 1. through 7. for the offense of Carrying or Possessing a Loaded Firearm on a Public Highway, then you must return a verdict of Guilty for the offense of Carrying or Possessing a Loaded Firearm on a Public Highway.

If the Prosecution has not done so, you must find the Defendant Not Guilty for the offense of Carrying or Possessing a Loaded Firearm on a Public Highway.

The jury was provided the following instruction on Count 5:[3]

In Charge 4, [Slavik] is charged with the offense of Place to Keep Ammunition.

A person commits the offense of Place to Keep Ammunition if, except as provided in Sections 134-5 and 134-9 of the Hawaiʻi Revised Statutes, he intentionally, knowingly, or recklessly possesses ammunition and did fail to confine the ammunition to his place of business, residence, or sojourn and/or did fail to confine the ammunition in an enclosed container when carried from his place of business, residence, or sojourn.

There are five (5) material elements for the offense of Place to Keep Ammunition and three (3) additional items, each of which the prosecution must prove beyond a reasonable doubt.

These five (5) material elements are:
1.    (conduct):  The Defendant possessed .22 caliber ammunition; and
2.    (attendant circumstances):  That the Defendant was not in compliance with Section 134-5 of the Hawaiʻi Revised Statutes which states that any person 16 years or over may carry and use any lawfully acquired rifle or shotgun and suitable ammunition while actually engaged in hunting or target shooting or while going to and from the place of hunting or target shooting; provided that the person has procured a hunting license under chapter 183D, Part II of the Hawaiʻi Revised Statutes.  A permit is not required when any lawfully acquired firearm is lent to a person including a minor, upon a target range or similar facility for purposes of target shooting, provided that the period of the loan does not exceed the time in which the person actually engages in target shooting upon the premises; and
3.    (attendant circumstances):  The Defendant was not in compliance with Section 134-9 of the Hawaiʻi Revised Statutes which states that in exceptional cases, when an applicant shows reasonable fear injury [sic] to the applicant's person or property, the chief of police of the appropriate county may grant a license to an applicant who is a citizen of the United States of the age of 21 years or more to carry a pistol or revolver and ammunition therefore concealed

---

[3]    As noted above, Counts 4, 6, and 7 were dismissed before trial. The instruction labeled this count (Count 5) as Charge 4 to remove references to the counts previously dismissed.

on the person within the county where the license is granted.  Where the urgency or need has been sufficiently indicated, the respective chief of police may grant an applicant of good moral character who is a citizen of the United States of the age of 21 years or more, is engaged in the protection of life and property, and is not prohibited under section 134-7 from the ownership or possession of a firearm, a license to carry a pistol or revolver and ammunition therefore unconcealed on the person within the county where the license is granted; and

4.  (conduct):  The Defendant did not confine the .22 caliber ammunition to his place of business, residence, or sojourn; and

5.  (conduct):  The Defendant did not carry the .22 caliber ammunition in an enclosed container from:
   a.  the place of purchase to his place of business, residence, or sojourn, or
   b.  between these places upon change of place of business, residence, or sojourn, or
   c.  between these places and any of the following:
      i.  a place of repair,
      ii.  a target range,
      iii.  a licensed dealer's place of business,
      iv.  an organized, scheduled firearms show or exhibit,
      v.  a place of formal hunter or firearm use, training, or instruction, or
      vi.  a police station.

The prosecution must also prove beyond a reasonable doubt:

6.  (state of mind):  The Defendant acted intentionally, knowingly, or recklessly with regard to the material elements 1. through 5.; and

7.  (date):  That this offense took place on or about June 20, 2018, the exact date is not required; and

8.  (jurisdiction and venue):  That this offense took place in Kau, County and State of Hawaiʻi.

If you find that the Prosecution has proven beyond a reasonable doubt items 1. through 8. for the offense of Place to Keep Ammunition, then you must return a verdict of Guilty for the offense of Place to Keep Ammunition.
If the Prosecution has not done so, you must find the Defendant Not Guilty for the offense of Place to Keep Ammunition.

The jury returned a guilty verdict on Counts 1, 2, 3, and 5.  Slavik was sentenced on April 22, 2019, to ten years in prison on Count 1, one year in prison on Counts 2 and 5, and thirty (30) days on Count 3, to run concurrently with each other and with the sentence imposed in a separate case.  He was also

12

ordered to pay $190 in fees to the Crime Victims Compensation Fund.  Slavik timely filed a notice of appeal.

II.  POINTS OF ERROR

Slavik raises four points of error on appeal, contending that the Circuit Court erred in:  (1) denying Slavik's Motion to Dismiss for insufficient charging language regarding the required states of mind for Counts 1 and 5; (2) granting the State's Notice of Intent and the State's Motion in Limine, and ruling that if Slavik testified, the State could introduce his Theft conviction and drug use to impeach his credibility; (3) denying Slavik's motion for judgment of acquittal as to Counts 2 and 3 because the State presented insufficient evidence that Slavik owned the firearm; and (4) refusing Slavik's proposed jury instructions concerning elements, for all counts, plainly erred in giving a general-law-pertaining-to-elements instruction, and further erred in presenting to the jury elements instructions which were prejudicially insufficient, confusing, misleading, and wrong.

III. APPLICABLE STANDARDS OF REVIEW

"Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the *de novo*, or right/wrong, standard."  State v. Mita, 124

Hawaiʻi 385, 389, 245 P.3d 458, 462 (2010) (citation, internal quotation marks, brackets, and ellipses omitted).

We review a circuit court's grant or denial of a motion in limine for an abuse of discretion.  State v. Mark, 120 Hawaiʻi 499, 514, 210 P.3d 22, 37 (App. 2009) (citing State v. Kealoha, 95 Hawaiʻi 365, 379, 22 P.3d 1012, 1026 (App. 2000)).  "However, when the trial court's order granting a motion in limine is an evidentiary decision based upon a decision that can 'yield only one correct result,' the standard of review is the right/wrong standard."  Id. at 514-15, 210 P.3d at 37-38 (quoting Walsh v. Chan, 80 Hawaiʻi 212, 215, 908 P.2d 1198, 1201 (1995)); Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 110, 58 P.3d 608, 621 (2002) (decisions regarding relevance are reviewed under the right/wrong standard).

> When reviewing a . . . motion for judgment of acquittal, we employ the same standard that a trial court applies to such a motion, namely, whether, upon the evidence viewed in the light most favorable to the prosecution and in full recognition of the province of the trier of fact, the evidence is sufficient to support a prima facie case so that a reasonable mind might fairly conclude guilt beyond a reasonable doubt.  Sufficient evidence to support a prima facie case requires substantial evidence as to every material element of the offense charged.  Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.  Under such a review, we give full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact.

State v. Jenkins, 93 Hawaiʻi 87, 99, 997 P.2d 13, 25 (2000) (quoting State v. Timoteo, 87 Hawaiʻi 108, 112-13, 952 P.2d 865, 869-70 (1997)) (format altered).

When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

Stanley v. State, 148 Hawaiʻi 489, 500-01, 479 P.3d 107, 118–19 (2021) (citations omitted; format altered).

IV. DISCUSSION

A. Sufficiency of the Charges in Counts 1 & 5

Slavik argues that the Circuit Court erred in denying the Motion to Dismiss because the Complaint did not contain the state of mind required to establish criminal culpability for Possessing Loaded Firearm on Highway and Place to Keep.

"The sufficiency of a charge 'implicates an accused's rights under the Hawaiʻi Constitution, article I, sections 5, 10 and 14.'" State v. Baker, 146 Hawaiʻi 299, 305, 463 P.3d 956, 962 (2020) (quoting State v. Nesmith, 127 Hawaiʻi 48, 52, 276 P.3d 617, 621 (2012) (**Nesmith II**)). A conviction based upon a defective charge "cannot be sustained, for that would constitute a denial of due process." State v. Wheeler, 121 Hawaiʻi 383, 391, 219 P.3d 1170, 1178 (2009) (quoting State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)). "When a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it

contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet."  State v. Kauhane, 145 Hawaiʻi 362, 369–70, 452 P.3d 359, 366–67 (2019) (citing Mita, 124 Hawaiʻi at 390, 245 P.3d at 463 and Jendrusch, 58 Haw. at 283, 567 P.2d at 1245).  "In other words, '[t]he relevant inquiry . . . is whether or not the charge [has] provided the accused with fair notice of the [offense's] essential elements.'"  Id. (quoting Mita, 124 Hawaiʻi at 390, 245 P.3d at 463).

"In general, '[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient.'"  Wheeler, 121 Hawaiʻi at 393, 219 P.3d at 1180 (quoting Jendrusch, 58 Haw. at 282, 567 P.2d at 1245); see Hawaiʻi Rules of Penal Procedure (**HRPP**) Rules 5 and 7 (2007).  But in some cases, "a charge tracking the language of the statute" inadequately describes the offense and thus violates the defendant's constitutional rights.  Baker, 146 Hawaiʻi at 306, 463 P.3d at 963 (citing Nesmith II, 127 Hawaiʻi at 53, 276 P.3d at 622).

The elements of an offense, as defined by HRS § 702-205 are (1) conduct, (2) attendant circumstances, and (3) results of conduct.  Nesmith II, 127 Hawaiʻi at 53, 276 P.3d at 622. "[M]ens rea is not an 'element of an offense' under HRS § 702-205."  Id. at 55, 276 P.3d at 624 (citing State v. Klinge, 92 Hawaiʻi 577, 584 n.3, 994 P.2d 509, 516 n.3 (2000)).

16

Nevertheless, mens rea is an "essential fact" that must be pled under HRPP Rule 7(d).  See id. at 55, 276 P.3d at 624.  "The state of mind must be included in the charge 'to alert the defendant of precisely what the defendant needs to defend against to avoid a conviction.'"  Baker, 146 Hawaiʻi at 306, 463 P.3d at 963 (brackets omitted) (quoting Nesmith II, 127 Hawaiʻi at 56, 276 P.3d at 625).  Failure to include the required state of mind in the charge requires the charge to be dismissed without prejudice.  State v. Gonzalez, 128 Hawaiʻi 314, 324, 288 P.3d 788, 798 (2012) (citing Nesmith II, 127 Hawaiʻi at 54, 276 P.3d at 623); see also State v. Maharaj, 131 Hawaiʻi 215, 219, 317 P.3d 659, 663 (2013).

The statutes at issue in Counts 1 and 5, HRS § 134-26[4] and HRS § 134-27,[5] do not describe a culpable state of mind.  In

---

[4]     HRS § 134-26 provides:

     **§ 134-26  Carrying or possessing a loaded firearm on a public highway; penalty.**  (a)  It shall be unlawful for any person on any public highway to carry on the person, or to have in the person's possession, or to carry in a vehicle any firearm loaded with ammunition; provided that this section shall not apply to any person who has in the person's possession or carries a pistol or revolver in accordance with a license issued as provided in section 134-9.
     (b)  Any vehicle used in the commission of an offense under this section shall be forfeited to the State, subject to the notice and hearing requirements of chapter 712A.
     (c)  Any person violating this section shall be guilty of a class B felony.

[5]     HRS § 134-27 provides:

     **§ 134-27  Place to keep ammunition; penalty.**  (a)  Except as provided in sections 134-5 [Possession by licensed hunters and minors] and 134-9 [Licenses to carry], all ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry ammunition in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following:

(continued...)

17

most instances, the default states of mind of intentionally, knowingly, or recklessly apply to each element of the offense, if the applicable statute is silent.  See HRS § 702-204 (2014); State v. Nesmith, 125 Hawaiʻi 232, 235, 257 P.3d 245, 248 (App. 2011) (**Nesmith I**), (citing State v. Bayly, 118 Hawaiʻi 1, 10, 185 P.3d 186, 195 (2008)), aff'd, Nesmith II, 127 Hawaiʻi 48, 276 P.3d 617.  In limited instances, the default states of mind listed in HRS § 702-204 (2014) do not apply to crimes defined outside the Hawaiʻi Penal Code (**HPC**), specifically, where "a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears."  HRS § 702-212(2) (2014); see also Gonzalez, 128 Hawaiʻi at 321, 288 P.3d at 795; State v. Holbron, 78 Hawaiʻi 422, 425, 895 P.2d 173, 176 (App. 1995).

Although HRS §§ 134-26 and 134-27 are not part of the HPC, nothing in the statutory language nor legislative history clearly indicates that the legislature intended for these crimes to be absolute liability offenses.  See, e.g., S. Stand. Comm. Rep. No. 3177, in 2006 Senate Journal, at 1542.

---

[5](...continued)
>     (1)   A place of repair;
>     (2)   A target range;
>     (3)   A licensed dealer's place of business;
>     (4)   An organized, scheduled firearms show or exhibit;
>     (5)   A place of formal hunter or firearm use training or instruction; or
>     (6)   A police station.
>     "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the ammunition.
>     (b)   Any person violating this section shall be guilty of a misdemeanor.

Here, the Complaint alleged in Count 1 that Slavik violated HRS § 134-26 because he "intentionally and/or knowingly possessed and/or carried in a vehicle any firearm loaded with ammunition on a public highway" without a license to carry, and in Count 5 that Slavik violated HRS § 134-27 because he "intentionally and/or knowingly possessed an item knowing it was ammunition, and he intentionally, knowingly, and/or recklessly" was not licensed to carry a pistol or revolver and ammunition concealed on his person and was not engaged in one of the statutorily permitted activities. Accordingly, in both offenses, a conduct element is possession.[6] The HPC provides that possession is "a voluntary act if the defendant knowingly procured or received the thing possessed or if the defendant was aware of the defendant's control of it for a sufficient period to have been able to terminate the defendant's possession." HRS § 702-202 (2014).

Slavik points to Jenkins, in which the Hawaiʻi Supreme Court examined the definition of "possession" found in HRS § 702-202, and reasoned that "in order for 'possession' to be a 'voluntary act,' some level of knowledge is required" and thus, "an individual may be found to have 'possessed' a thing only if he or she did so 'knowingly' or 'intentionally.'" Jenkins, 93 Hawaiʻi at 110, 997 P.2d at 36. "Correlatively, an individual may not be found to have voluntarily 'possessed' a thing if he or she was merely 'reckless' in doing so." Id. Thus, the state of

---

[6] It appears that "carried in a vehicle" is an alternative conduct element, but it is not at issue in this appeal and, therefore, we do not address it.

mind required by the term "possession" was knowingly or intentionally rather than the default "intentionally, knowingly, or recklessly" provided by HRS § 702-204.  Id.  The supreme court emphasized, however, that section 702-202 "establishes the scienter requisite only for the possession of a thing *itself*." Id. at 111, 997 P.2d at 37.  The court held:

> [F]or the purposes of HRS § 134-7(b),[7] "possession" must be analyzed employing a two-pronged analysis:  (1) the voluntary act of "possession" of an object *itself* is, by way of HRS § 702-202, satisfied where an individual acts knowingly with respect to his or her conduct; and (2) the requisite state of mind with respect to the attendant circumstances — *i.e.*, the particular qualities of the object that make it illegal to possess it — is, by way of HRS § 702-204, satisfied by a reckless state of mind.  Thus, as applied, to prove the "voluntary act" of possession, the prosecution must first adduce evidence that the defendant knowingly procured or received an object, or was aware of his or her control of that object for a sufficient period to have terminated possession.  See HRS § 702-202.  Second, to prove the requisite state of mind regarding the particular qualities of the object, the prosecution must, <u>at the very least</u>, adduce evidence that the defendant possessed the object in reckless disregard of the substantial and unjustifiable risk that it was a firearm.  See HRS § 702-204.

Id. (underlined emphasis added).

Here, in Count 1, in relevant part the State charged that Slavik "intentionally and/or knowingly possessed and/or carried in a vehicle any firearm loaded with ammunition on a public highway," but did not allege any state of mind as to Slavik's scienter regarding the qualities of the object as a firearm.  Count 1 alleges a violation of HRS § 134-26(a). Similar to the relevant statute in Jenkins,[8] HRS § 134-26(a) is silent regarding the state of mind required for conviction.  93

---

[7]  HRS § 134-7 (2011), entitled "Ownership or possession prohibited, when," describes various other felony and misdemeanor violations stemming from the ownership or possession of a firearm or ammunition.

[8]  In Jenkins, the relevant charge asserted a violation of HRS § 134-7(b) (1993 and Supp. 1997).  93 Hawaiʻi at 109, 997 P.2d at 35.

Hawaiʻi at 109, 997 P.2d at 35. As stated in <u>Jenkins</u>, regarding the second prong to establish possession, "to prove the requisite state of mind regarding the particular qualities of the object, the prosecution must, <u>at the very least</u>, adduce evidence that the defendant possessed the object in reckless disregard of the substantial and unjustifiable risk that it was a firearm. <u>See</u> HRS § 702-204." <u>Id.</u> at 111, 997 P.2d at 37 (emphasis added). Thus, for this second prong in <u>Jenkins</u>, HRS § 702-204[9] applies and the State must have alleged that Slavik possessed the object with an intentional, knowing, or reckless state of mind as to the particular qualities that make it illegal to possess it, *i.e.*, that it was a firearm. <u>Id.</u>; HRS § 702-204. Because the State failed to allege any state of mind for Slavik's scienter regarding the qualities of the object as a firearm, Count 1 is defective.

Slavik asserted in the Circuit Court that Counts 1 and 5 were deficient for failing to allege the proper state of mind that the subject items were a prohibited item. Thus, he timely raised this issue in the trial court. Here, Count 1 failed to properly allege the second prong in the <u>Jenkins</u> analysis applicable to the attendant circumstance of the charge and thus failed to provide Slavik with fair notice of the charge against him in Count 1. <u>See</u> <u>Wheeler</u>, 121 Hawaiʻi at 393, 219 P.3d 1180. "A charge that fails to charge a requisite state of mind cannot

---

[9]      HRS § 702-204 provides in relevant part:  "When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, **or** recklessly."  (Emphasis added).

be construed reasonably to state an offense and thus the charge is dismissed without prejudice because it violates due process." State v. Apollonio, 130 Hawaiʻi 353, 359, 311 P.3d 676, 682 (2013); Nesmith II, 127 Hawaiʻi at 56, 276 P.3d at 625; Maharaj, 131 Hawaiʻi at 219, 317 P.3d at 663; State v. Armitage, 132 Hawaiʻi 36, 51, 319 P.3d 1044, 1059 (2014); State v. Souleng, 134 Hawaiʻi 465, 469, 342 P.3d 884, 888 (App. 2015). Thus, Slavik's conviction on Count 1 must be vacated and dismissed without prejudice.

In Count 5, the State charged that Slavik "intentionally and/or knowingly possessed an item knowing it was ammunition, and he intentionally, knowingly, and/or recklessly" was not licensed to carry a pistol or revolver and ammunition concealed on his person "and he intentionally, and/or knowingly failed to confine the ammunition to" allowed places "and/or did fail [**no state of mind specified**] to carry the ammunition in an enclosed container[.]" (Underline emphasis added, bolded and bracketed language added). Count 5 alleges a violation of HRS § 134-27(a), which does not specify a state of mind required for conviction. Thus, similar to the subject charge in Jenkins, HRS § 702-204 provides the applicable state of mind for the second prong in establishing possession. 93 Hawaiʻi at 111, 997 P.2d at 37.

We disagree with Slavik's contention that Count 5 is defective under Jenkins for only alleging a "knowing" state of mind as to the particular qualities that make the item illegal to possess it, *i.e.*, that it was ammunition. Because HRS § 702-204

provides the applicable state of mind for this attendant circumstance element, 93 Hawaiʻi at 111, 997 P.2d at 37, **"at the very least"** a <u>reckless</u> state of mind applies to the second prong in <u>Jenkins</u> for establishing possession. <u>Id.</u> (emphasis added). However, under HRS § 702-204, an intentional <u>or</u> knowing state of mind could also establish the second prong in <u>Jenkins</u>. Count 5 alleges Slavik had a <u>knowing</u> state of mind regarding the qualities of the item that made it illegal to possess it, *i.e.,* that it was ammunition. This is sufficient for the second prong under <u>Jenkins</u>.

We agree with Slavik, however, that Count 5 is defective because it completely fails to assert any state of mind regarding his failure to carry the ammunition in an enclosed container. Slavik did not raise this contention in the Circuit Court, and instead raised it for the first time in his appellate opening brief. Thus, we must analyze this argument under the <u>Motta</u>/<u>Wells</u> post-conviction liberal construction rule. <u>See</u> <u>State v. Tominiko</u>, 126 Hawaiʻi 68, 266 P.3d 1122 (2011).

> Under the Motta/Wells rule, charges challenged for the first time on appeal are presumed valid. Accordingly, we will only vacate a defendant's conviction under this standard if the defendant can show: (1) that the charge cannot reasonably be construed to allege a crime; or (2) that the defendant was prejudiced.

<u>State v. Kauhane</u>, 145 Hawaiʻi 362, 370, 452 P.3d 359, 367 (2019).

In <u>Apollonio</u>, the Hawaiʻi Supreme Court held that, even where the defendant raised a challenge to a charge for the first time on appeal and thus the charge was construed under the liberal standard, because the charge failed to assert a requisite state of mind it could not be "reasonably construed to state an

offense." 130 Hawaiʻi at 358, 311 P.3d at 681. Thus, the supreme court held that the charge must be dismissed without prejudice. Id. (citing Nesmith II, 127 Hawaiʻi at 56, 276 P.3d at 625 and State v. Elliott, 77 Hawaiʻi 309, 884 P.2d 372 (1994)). Given the applicable case law, Count 5 must also be dismissed without prejudice.

B.   State's Motion in Limine

Slavik contends that the Circuit Court erred in the Order Granting State's Motion in Limine, when it found and concluded that:  "The State may use the Defendant's prior bad acts if the Defendant testifies and a proper foundation is laid." Slavik also contends that the Circuit Court plainly erred in ruling that the State could impeach him with his "theft conviction" because, at the time the DPA averred in conjunction with the State's Notice of Intent that Slavik had been convicted of theft, although the Circuit Court had set aside its earlier deferred acceptance of a guilty plea in the theft case, it had not yet entered a judgment of conviction.

As the Circuit Court's order does not specify what it is allowing the State to use, we consider the Notice of Intent and the State's Motion in Limine. The August 21, 2018 Notice of Intent merely states that "the State intends to present evidence relating to prior investigations and allegations of drug activity and/or [Slavik's] prior bad acts." The DPA's attached declaration states:  "I have reviewed the case-file and reports pertaining to the following incident that has been provided to defense counsel:  On August 8, 2018, Defendant was convicted for

24

Theft in the Second Degree, the disposition of which is documented in case number CR15-1-0139K." The declaration continues:

> At trial the State may seek to introduce evidence from this incident as permitted by Rule 404 of the Hawaiʻi Rules of Evidence; the intended purposes include, but are not limited to: motive, opportunity, intent, preparation, knowledge, identity, state of mind, negating any argument of mistake, addressing self-defense claims, and truth and veracity of the Defendant.

The State's Motion in Limine provided little more, saying only that it sought an order permitting the introduction of "evidence pertaining to the prior bad acts of [Slavik]. The prior bad acts which the State seeks to introduce in its case in chief were noticed" in the State's Notice of Intent. The DPA's declaration again incorrectly states Slavik was convicted of Theft in the Second Degree on August 8, 2018, in CR15-1-0139K, and "[t]he State seeks to introduce at trial evidence through testimony of officers of the Defendant's previous actions as the credibility and impeachment of the Defendant in the above-captioned case."

The State's Motion in Limine relied on HRE Rules 403[10] and 404(b),[11] and the State argued that, although Slavik had not

---

[10] HRE Rule 403 provides:

> **Rule 403 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time**. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[11] HRE Rule 404 provides, in pertinent part:

> **Rule 404 Character evidence not admissible to prove conduct; exceptions; other crimes.** (a) Character evidence generally. Evidence of a person's character or a trait of a
> (continued...)

been sentenced, the conviction for theft is directly related to his credibility and honesty.  This argument is without merit; a judgment for conviction is not final, and does not constitute a conviction, unless it includes the final adjudication and the final sentence.  See generally State v. Kilborn, 109 Hawaiʻi 435, 442, 127 P.3d 95, 102 (App. 2005).

Moreover, HRE Rule 609 requires *conviction* of a crime of dishonesty.  This rule provides, in relevant part:

> **Rule 609.  Impeachment by evidence of conviction of crime.**  (a) General rule.  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty.  However, in a criminal case where the defendant takes the stand, the defendant shall not be questioned or evidence introduced as to whether the defendant has been convicted of a crime, for the sole purpose of attacking credibility, unless the defendant has oneself introduced testimony for the purpose of establishing the defendant's credibility as a witness, in which case the defendant shall be treated as any other witness as provided in this rule.

HRE Rule 609(a).

The supreme court has held that "a theft offense is not, *per se*, a 'crime of dishonesty' such that it is admissible

---

[11](...continued)
person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

. . . .

(b)  Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.  In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

to impeach a criminal defendant's credibility." State v. Pacheco, 96 Hawaiʻi 83, 100, 26 P.3d 572, 589 (2001). "[I]t is incumbent upon the prosecution to establish, and upon the trial court expressly to find, that a defendant's prior conviction, which has been proffered to impeach the defendant's testimony, is of a 'crime of dishonesty,' such that it is relevant to and probative of the defendant's veracity as a witness." Id. at 99, 26 P.3d at 588. Thus, for a prior theft offense to be admissible, the State must demonstrate that it was committed "under circumstances that, by their very nature, render his or her prior conviction of the offense relevant to and probative of his or her veracity as a witness." Id. at 100, 26 P.3d at 589.

Here, the State offered no evidence, and the record is otherwise silent, with respect to the circumstances under which Slavik committed the theft offense prosecuted in CR15-1-0139K. Consequently, even assuming, *arguendo*, there was a conviction, the State failed to establish that Slavik's prior theft offense involved conduct relevant to or probative of Slavik's veracity as a witness. Absent the requisite showing, Slavik's prior conviction of a theft offense could not be deemed a "crime of dishonesty" and was therefore inadmissible to impeach his credibility as a witness. Id.

For the reasons stated, we conclude that the Circuit Court erred in granting the State's Motion in Limine.

C.    Slavik's Motion for Judgment of Acquittal
      as to Counts 2 and 3

Slavik argues that the Circuit Court erred in denying his motion for judgment of acquittal as to Count 2 (Permits to Acquire; HRS § 134-2(a)) and Count 3 (Registration Mandatory; HRS § 134-3(b)) because the State presented insufficient evidence that Slavik <u>owned</u> the firearm.  As set forth above, Counts 2 and 3 charged:

> <u>COUNT 2 (C18017310/KU)</u>
> On or about the 20th day of June, 2018, in Kau, County and State of Hawaiʻi, NIKOLAUS SLAVIK intentionally, knowingly or recklessly acquired the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, without first procuring a permit to acquire the ownership of the firearm from the chief of police of the county of his place of business or, if there was no place of business, his place of residence or, if there was neither a place of business nor residence, his place of sojourn, thereby committing the offense of Permits to Acquire, in violation of Sections 134-2(a) and 134-17, Hawaiʻi Revised Statutes, as amended.
>
> <u>COUNT 3 (C18017311/KU)</u>
> On or about the 20th day of June, 2018, in Kau, County and State of Hawaiʻi, NIKOLAUS SLAVIK who intentionally and/or knowingly acquired a firearm pursuant to Section 134-2, Hawaiʻi Revised Statutes, and such acquisition was by way of gift, inheritance, bequest, or in any other manner, whether such firearm is usable or unusable, serviceable or unserviceable, modern or antique, registered by prior law or unregistered, NIKOLAUS SLAVIK did intentionally, knowingly, or recklessly fail to register the firearm in the manner prescribed by section 134-3 within five days of acquisition, thereby committing the offense of Registration Mandatory, in violation of Sections 134-3(b) and 134-17, Hawaiʻi Revised Statutes, as amended.

HRS chapter 134 governs firearms, ammunition, and dangerous weapons in Hawaiʻi, with part I of the chapter setting

28

forth the general regulations applicable to firearms and

ammunition.[12]  In the simplest possible terms, HRS § 134-2(a)

---

[12]    The current HRS chapter 134, part I, was first enacted in 1988 with Act 275, "A Bill for an Act Relating to Firearms and Ammunition," which was effectively a revision of the prior chapter 134.  See 1988 Haw. Sess. Laws Act 275, § 1 at 510 ("The purpose of this Act is to clarify and improve the existing language of the Firearms, Ammunition and Dangerous Weapons Act, Chapter 134, part I, Hawaii Revised Statutes, General Regulations."), § 4 at 517, and § 6 at 517.

The earliest version of what would become HRS § 134-2 was enacted in 1933 and provided, *inter alia*:

> No person residing or doing business or temporarily sojourning within the Territory shall take possession of any firearm of any description . . . either through sale, gift, loan, bequest, or otherwise . . . until he shall first have procured from the chief of police . . . a permit to acquire as prescribed herein.

1933 Haw. Sess. Laws, Special Session, Act 26, § 4 at 37 (emphasis added). "The purpose of the Bill is to give the law enforcing agencies of the Territory a better means of controlling the sale, transfer and possession of firearms[.]"  H. Stand. Comm. Rep. No. 89, in 1933 House Journal, Special Session, at 427.

By 1935, this law was codified as Revised Laws of Hawaiʻi (**RLH**) § 2542 and provided, in pertinent part:

> **Sec. 2542.  Registration by transfer; permits to acquire; penalty**.  No person shall take possession of any firearms of any description . . . either through sale, gift, loan, bequest, or otherwise, . . . until he shall first have procured from the chief of police . . . a permit to acquire as prescribed herein.

(Emphasis added).

Ten years later, RLH § 7183 (1945) read, in part:

> **Sec. 7183.  Registration on transfer; permits to acquire; penalty**.  No person shall take possession of any firearms of any description . . . either through sale, gift, loan, bequest, or otherwise . . . until he shall first have procured from the chief of police . . . a permit to acquire as prescribed herein.

(Emphasis added).

In 1955, Revised Laws of Hawaiʻi included:

> **§ 157-3.  Permits to acquire; registration; penalty**. No person shall acquire the ownership of a firearm . . . either by purchase, gift, inheritance, bequest or in any other manner, . . . until he has first procured from the chief of police . . . a permit to acquire as prescribed herein[.]

RLH § 157-3 (1955) (emphasis added).

(continued...)

provides that no person shall "acquire the ownership" of a firearm until that person properly procures a permit to acquire ownership of a firearm.[13]  Simply stated, HRS § 134-3 mandates

---

[12](...continued)
The significant change between the 1945 and 1955 Revised Laws -- from "take possession" to "acquire the ownership" -- was made in 1949.  Act 192 of 1949 originated as H.B. 888.  1949 Haw. Sess. Laws, Act 192, § 1 at 459-60.  The Senate had also introduced its own bill, S.B. 560, "designed to relieve licensed hunters from the restricitve provisions of the present law requiring registration of rifles, shotguns and ammunition, and permits to purchase ammunition."  See S. Stand. Comm. Rep. No. 314, in 1949 Senate Journal, at 1041.  The two bodies apparently agreed to proceed on H.B. 888.  The conference committee ultimately recommended amended language which included the "No person shall acquire the ownership of a firearm . . ." as was finally enacted.  Conf. Comm. Rep. No. 19, in 1949 House Journal, at 2289-90; Conf. Comm. Rep. No. 21, in 1949 Senate Journal, at 1584-85.

By 1968, the applicable statute had been re-codified as chapter 134, but retained the key wording:

> **§ 134-3.  Permits to acquire; registration; penalty.**
> No person shall <u>acquire the ownership</u> of a firearm . . . either by purchase, gift, inheritance, bequest, or in any other manner, . . . until he has first procured from the chief of police . . . a permit to acquire as prescribed herein[.]

HRS § 134-3 (1968) (emphasis added).

In 1988, chapter 134, part I was replaced with a new version that sought to clarify and improve the chapter's language.  1988 Haw. Sess. Laws Act 275, § 1 at 510.  Many of the part I sections were substantively unchanged, although some were re-codified into different sections in different order.  <u>Compare</u> HRS § 134-3 (1985) <u>with</u> HRS § 134-2 (2011).

Most significantly, the legislative history reveals that Hawaii's firearm control statute was originally drafted to require a permit to "take possession of" a firearm but the legislature purposefully changed that to "acquire the ownership of" a firearm.

[13]    HRS § 134-2 provides in pertinent part:

> **§ 134-2  Permits to acquire.**  (a)  No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section.  When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of a firearm; provided that upon presentation of a copy of the
> (continued...)

the registration of firearms, with very limited exceptions, and
HRS § 134-3(b) mandates that every person who acquires a firearm
pursuant to HRS § 134-2(a) – *i.e.*, every person who acquires the
ownership of a firearm – must register the firearm within five
days of acquisition.[14]  As Slavik notes, HRS § 134-4 (2011)
governs the possession of a firearm that is owned by another.[15]

---

[13](...continued)
death certificate of the owner making the bequest, any heir
or legatee may transfer the inherited or bequested firearm
directly to a dealer licensed under section 134-31 or
licensed by the United States Department of Justice without
complying with the requirements of this section.

Generally stated, most of the remaining subsections of HRS § 134-2
describe in detail the requirements and procedures for acquiring the ownership
of a firearm, as well as proscribe anyone from transferring a firearm except
as provided in HRS chapter 134.  HRS § 134-17 sets out the penalties for
violation of the mandates of HRS chapter 134.

[14]    HRS § 134-3 provides in pertinent part:

> **§ 134-3  Registration, mandatory, exceptions.**  (a)
> Every person arriving in the State who brings or by any
> other manner causes to be brought into the State a firearm
> of any description, whether usable or unusable, serviceable
> or unserviceable, modern or antique, shall register the
> firearm within five days after arrival of the person or of
> the firearm, whichever arrives later, with the chief of
> police of the county of the person's place of business or,
> if there is no place of business, the person's residence or,
> if there is neither a place of business nor residence, the
> person's place of sojourn.  A nonresident alien may bring
> firearms not otherwise prohibited by law into the State for
> a continuous period not to exceed ninety days; provided that
> the person meets the registration requirement of this
> section and the person possesses:
>
>          . . . .
>
>          (b)  Every person who acquires a firearm pursuant to
> section 134-2 shall register the firearm in the manner
> prescribed by this section within five days of acquisition.
> . . .

[15]    HRS § 134-4 provides in pertinent part:

> **§ 134-4  Transfer, possession of firearms.**  (a) . . .
>
>          (b)  No person shall possess any firearm that is owned
> by another, regardless of whether the owner has consented to
> possession of the firearm, without a permit from the chief
> of police of the appropriate county, except as provided in
> subsection (c) and section 134-5.

(continued...)

HRS chapter 134 does not define ownership, but states that "'Acquire' means gain ownership of."  HRS 134-1 (2011).  Black's Law Dictionary defines "ownership" as "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others. . . .  Ownership implies the right to possess a thing, regardless of any actual or constructive control.  Ownership rights are general, permanent, and heritable[.]"  *Ownership*, <u>Black's Law Dictionary</u> 1332 (11th ed. 2019).  Black's defines "possession" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property."  <u>Id.</u> at 1408.  Similarly, Webster's Dictionary defines "owner" as "one that owns:  one that has the legal or rightful title whether the possessor or not."  *Owner*, <u>Webster's Third New International Dictionary</u> 1612 (1986).

Slavik contends that the State presented no evidence that he owned the firearm or acquired ownership of the firearm, only that he had possession of it on June 20, 2018.  As Slavik highlights, during deliberation, the jury sent Communication No. 1, which asked, "Would you consider possession as ownership? in regards to charge #2."  The Circuit Court responded by directing

---

[15](...continued)
            (c)  Any lawfully acquired rifle or shotgun may be lent to an adult for use within the State for a period not to exceed fifteen days without a permit; provided that where the rifle or shotgun is to be used outside of the State, the loan may be for a period not to exceed seventy-five days.

            (d)  No person shall knowingly lend a firearm to any person who is prohibited from ownership or possession of a firearm under section 134-7.

        HRS § 134-5 (2011), which does not appear to be relevant to any argument in this case, allows for possession of certain firearms by licensed hunters, and for target shooting and hunting, as detailed in that provision.

the jury to refer to the jury instructions. Notably, no definition of ownership was included in the jury instructions, but they included an instruction differentiating between actual and constructive possession. Slavik submits that the jury apparently, but erroneously, concluded that ownership and possession were synonymous in finding Slavik guilty on Counts 2 and 3.

As to Count 3, Slavik further argues that since the State presented no evidence concerning whether or when Slavik acquired ownership of the firearm, it could not prove that he failed to register it within five days, as required under HRS § 134-3(b).

The State argues, in essence, that evidence of possession is sufficient evidence of ownership, citing two civil cases for the proposition that possession is *prima facie* evidence of ownership that the other party has to rebut. The State points to Officer Ivy's testimony that he found Slavik sitting in the driver's side of a vehicle, eyes closed, with the seat reclined, and there was a pistol laying on the passenger seat under Slavik's right hand. The State contends that the evidence that Slavik was in exclusive and uncontested possession of the firearm, and the lack of any evidence that another person owned the firearm, constituted sufficient evidence that Slavik had acquired ownership of the firearm.

The supreme court has established that "an essential or material element of a crime is one whose specification with precise accuracy is necessary to establish the very illegality of

the behavior." Jenkins, 93 Hawaiʻi at 108, 997 P.2d at 34 (citation and brackets omitted). The conduct element of HRS § 134-2(a) that must be proven with precise accuracy is that a person acquired the ownership of a firearm.[16] Reading the statutory language in the context of the entire firearms control statute, HRS chapter 134, it is clear that the legislature did not intend ownership to be synonymous with possession. See Jenkins, 93 Hawaiʻi at 108, 997 P.2d at 34 ("[w]e read statutory language in the context of the *entire* statute, and construe it in a manner consistent with its purpose") (citation and internal quotation marks omitted). Some provisions in HRS chapter 134, including HRS §§ 134-2(a) and 134-3(b), regulate ownership of firearms. Other provisions, such as HRS §§ 134-4(b), 134-5, 134-22 (2011),[17] and 134-26,[18] govern possession of a firearm under various circumstances. Still other provisions of HRS chapter 134 establish mandates for, *inter alia*, ownership or possession of a firearm. See, e.g., HRS §§ 134-7 (prohibiting ownership or possession by, among others, a person who is a fugitive from justice or who has been convicted of a felony) & 134-29 (2011 and Supp. 2019) (requiring any person who owns or possesses a firearm to report its loss, theft, or destruction). The legislative history of Hawaii's firearm control statute confirms that the

---

[16] Equally essential is the element that the acquisition of ownership of the firearm was prior to procuring a permit to acquire the ownership of a firearm. See HRS § 134-2(a).

[17] HRS § 134-22 proscribes knowingly possessing a firearm with the intent to facilitate the commission of certain felonies.

[18] HRS § 134-26 prohibits carrying or possessing a loaded firearm on a public highway, except under certain circumstances.

legislature deliberately changed the permitting and registration requirements to associate them with ownership rather than possession.

Although the burden-shifting suggested by the State may be acceptable in a civil case, in criminal cases, "the burden is always upon the prosecution to establish every element of crime by proof beyond a reasonable doubt, never upon the accused to disprove the existence of any necessary element."  State v. Cuevas, 53 Haw. 110, 113, 488 P.2d 322, 324 (1971).

> [T]he burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted.  It is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime.

Id. (quoting Davis v. United States, 160 U.S. 469, 487 (1895)). For this reason, the civil cases cited by the State are inapplicable.

That said, it is well-established that a trier of fact may draw a reasonable inference from a fact that is proven to one that is permissibly inferred.  See, e.g., State v. Pone, 78 Hawaiʻi 262, 271, 892 P.2d 455, 464 (1995).  However, "an evidentiary device such as a presumption or an inference must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt."  State v. Bumanglag, 63 Haw. 596, 618, 634 P.2d 80, 94 (1981) (citation and internal quotation marks omitted).  It has been recognized that due process requires that there be "a natural and rational evidentiary relation between the facts proven and the ultimate fact."  Id. (citation omitted).  In

the context of Hawaii's firearm control statute, wherein the legislature imposed a variety of distinct mandates and penalties arising out of the acquisition of ownership as opposed to possession of a firearm and vice versa, we hold that evidence of possession of a firearm, without more, is insufficient to support a justifiable inference that a defendant acquired ownership of the firearm.[19]  To conclude otherwise would undermine the legislative determination of the distinction between possession and ownership and violate a defendant's due process right to be convicted only upon proof beyond a reasonable doubt of the particular charge against him or her.

Here, there is no evidence in the record, other than the evidence that Slavik was in possession of a firearm, that supports a determination that Slavik acquired ownership of a firearm.  The only relevant evidence presented was the testimony of the HCPD Officers Ivy and Fui, who found Slavik sleeping in a car on the side of a public highway with the gun on the seat next to him, underneath his hand.  Officer Fui testified, in essence, that Slavik was not the owner of the car in which he was sleeping.  No other evidence concerning ownership of the firearm was presented.  Accordingly, viewing the evidence in the light most favorable to the prosecution, and in full recognition of the province of the trier of fact, we conclude that the Circuit Court erred in denying Slavik's motion for acquittal as to Counts 2 and

---

[19]     We recognize that proof of possession, along with other facts in evidence, including circumstantial evidence and reasonable inferences therefrom, might be sufficient to sustain a conviction of an offense involving acquisition of ownership under HRS chapter 134.

3, both of which required the State to establish that Slavik acquired ownership of the firearm.  Slavik's conviction as to Counts 2 and 3 are reversed.

> D.   <u>Jury Instructions</u>

Slavik asserts numerous errors in the Circuit Court's instructions to the jury with respect to Counts 1, 2, 3, and 5. Overall, the jury instructions defining at least some of the offenses are difficult to follow, are substantially modified from the Hawaiʻi Standard Jury Instructions Criminal (HAWJIC), and certain of Slavik's arguments appear to have merit.  However, as we have concluded that Slavik's conviction as to Counts 2 and 3 must be reversed, and Counts 1 and 5 must be vacated and remanded for dismissal without prejudice, we decline to address the alleged instructional errors.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Circuit Court's April 22, 2019 Judgment is reversed with respect to Counts 2 and 3.  The Judgment is vacated and remanded for dismissal without prejudice as to Counts 1 and 5.

> /s/ Lisa M. Ginoza
> Chief Judge
>
> /s/ Katherine G. Leonard
> Associate Judge
>
> /s/ Karen T. Nakasone
> Associate Judge